UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN UTNE,<br>　　　　Plaintiff,<br>　　v.<br>HOME DEPOT U.S.A., INC.,<br>　　　　Defendant. | Case No. 16-cv-01854-RS<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY** |

## I. INTRODUCTION

Defendant Home Depot moves for partial summary judgment on plaintiff John Utne's claims related to Home Depot's rounding policy. According to Home Depot, because its rounding policy is neutral on its face and in application, and does not result in the systematic undercompensation of hourly California employees, it is entitled to judgment as a matter of law on Utne's California Labor Code and PAGA claims that are predicated on the policy. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for December 6, 2017, is vacated. The motion for partial summary judgment is granted.

## II. BACKGROUND

Plaintiff John Utne currently works Home Depot's Ceres, California, store in an hourly position as a non-exempt employee. Utne brings this putative class and representative action against Home Depot, alleging violations of the California Labor and Business and Professions

Codes. He alleges that during the relevant time period, Home Depot failed to pay putative class members for all hours worked, failed to pay them overtime wages for all overtime hours worked, failed to provide them with accurate written wage statements, and failed to pay them timely for all of their final wages following separation of employment. He seeks to recover unpaid wages, restitution, and related relief on behalf of himself and others similarly situated. Home Depot seeks partial summary judgment on Utne's claims to the extent they are premised on Home Depot's practice of rounding time punches for payroll purposes only.

## III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e*., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show

1  that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Rule 56(e) (2010).

## IV. DISCUSSION

Home Depot utilizes a timekeeping software system to track the time worked by hourly employees for payroll purposes. Employees punch in at the start of their shifts and punch out at the end. For breaks during their scheduled shifts, employees punch out and punch back in to resume their shifts. The timekeeping system is programmed to round punches either up or down to the nearest quarter of an hour for pay purposes. *See* Declaration of Christine Barnaby, Dkt. No. 58 ("Barnaby Decl.")[1] ¶ 5. If there are multiple punch pairs during a shift, such as when an employee

---

[1] Utne objects to the Barnaby declaration as hearsay. That objection is denied. Barnaby testified that the documents attached to her declaration were created and are maintained in the ordinary

punches out for a break, the total shift time before and after the meal period is totaled and then rounded to the nearest quarter hour. *Id.* Time entries of seven minutes or less are rounded down, while entries of eight minutes or more are rounded up, to the next quarter hour.

Under federal law, "rounding" is acceptable as long as the practice "averages out" and "is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b). In *See's Candy Shops, Inc. v. Superior Court*, 2010 Cal. App. 4th 889 (2012), the California Court of Appeal held that the federal rounding rule also applies to California state labor claims, so long as the "rounding-over-time policy is neutral, both facially and as applied." *Id.* at 903. Rounding policies have been found to violate this rule when they only round down and thereby "systematically undercompensate employees." *See's Candy*, 2010 Cal. App. 4th at 902.

Home Depot submits that its rounding practice is neutral on its face and as applied to Utne, because it rounds shift hours to the nearest quarter hour. On some occasions, rounding will be favorable to a given employee, by compensating him or her for more time than was actually worked. On others, the opposite will be true. Home Depot offers expert analysis of time and pay records for roughly 10 percent of the putative class (13,387 hourly employees and 4.3 million shifts) to demonstrate that its policy does not systematically undercompensate employees. Home Depot's expert analysis shows that during the five-year class period, 57 percent of these shifts were either overpaid or unaffected by Home Depot's rounding practice, while 43 percent of shifts were underpaid. Declaration of G. Edward Anderson, Ph.D, Dkt No. 57-1 ("Anderson Decl.")[2] ¶ 10; Anderson Decl. tbl.2. Of all rounded shift minutes, 51.3 percent resulted in increased, rather

---

course of business and fall within the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6).

[2] Utne raises several evidentiary objections to Dr. Anderson's declaration in part and as a whole. Those objections are denied. Dr. Anderson does not purport to opine on whether Home Depot's rounding practice is legally acceptable, only whether it meets the objective criteria he uses to determine whether it is "unbiased" from a statistical perspective. The objection that Dr. Anderson's testimony lacks foundation is also unfounded, as he did not perform complex statistical analysis on the data requiring further explanation.

than decreased, paid time. *Id.* ¶ 11. On a pay period basis, rounding resulted in more than half of all analyzed pay periods generating additional paid minutes. *Id.* ¶ 12; Anderson Decl., Dkt No. 57-1, tbl.3. The average potential class member was paid an additional 11.3 minutes per pay period. *Id.* ¶ 12. The overall net result is that, by rounding, Home Depot paid the potential class members in the 10 percent sample for 339,331 more minutes (5,656 more hours) than if it had paid them for the actual minutes worked. *Id.* ¶ 11. On this basis alone, Home Depot contends its rounding policy is consistent with federal and California labor law and as a result it is entitled to summary judgment with respect to that theory of liability.

Home Depot further argues that Utne's time records show that for some shifts, he was overpaid by a few minutes and for others, he was underpaid by a few minutes. *Id.* ¶ 8. This fluctuation, Home Depot explains, is fully consistent with federal regulations. *See Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership*, 821 F.3d 1069, 1077 (9th Cir. 2016). As the Ninth Circuit explained in *Corbin*, federal regulations do not require that every employee gain or break even in every pay period. In other words, that rounding results in net undercompensation of some employees during a given time period does not render the practice unlawful as long as it averages out "in the long-term." *See Corbin*, 821 F.3d at 1077. Home Depot concedes that for the relevant period through May 2017, the net result of rounding on Utne's pay resulted in underpayment by an average of 36 seconds per shift.[3] Utne asserts that this fact alone is enough to preclude summary judgment in Home Depot's favor. According to Utne, because California law requires payment of all wages for all hours worked, Home Depot's policy is unlawful. Although *See's Candy* did not directly address the impact of a cumulative finding of underpayment during the entire period of employment, it rejected a similar argument regarding underpayment of a given employee during a particular pay period. *See* 2010 Cal. App. at 904. In *Corbin*, the Ninth Circuit found that although the plaintiff lost $15.02 in aggregate compensation over the period that the

---

[3] Between March 14, 2012, and May 30, 2017, Utne worked 1,086 shifts and had a net impact from rounding of -683 minutes, or -0.63 minutes per shift, on average. Anderson Decl., Dkt No. 57-1, ¶ 9 n.4.

rounding policy was in place, the overall analysis of the rounding policy's average effect indicated that it was neutral. The same principle applies here. Although Utne himself experienced a net loss of compensation over the proposed class period, that will not defeat summary judgment if the rounding policy overall can be shown to be neutral.

Utne's expert declaration does not create a genuine fact dispute with respect to the impact of Home Depot's rounding policy on other employees. Home Depot contends that over the period analyzed, from March 2012 through May 2017, 7,102 of the 13,387 sample employees (53%) were negatively impacted by an average of 141.7 minutes per employee. *See* Anderson Decl., Dkt No. 57-1, tbl.4. Utne's expert disputes those numbers, asserting that out of 13,392 employees analyzed, 7,433 or 55.5% were negatively impacted by the rounding policy. *See* Declaration of James Toney, Dkt No. 68-2 ("Toney Decl.") ¶ 7. Utne contends that the discrepancy is due to Home Depot's misrepresentations about how time calculations are performed. Utne's expert states that his review of Utne's punch records led him to conclude that the punch sets are the basis for rounding rather than the total amount of time worked on a shift. As the basis of this observation, Toney relies upon HD-UTNE-0000538, which shows two punch sets for 10/5/2015. The first punch set reflects actual time worked of 4 hours and 2 minutes, which is rounded down to 4 hours. The second punch set reflects actual time worked of 2 hours and 11 minutes, which is rounded up to 2 hours and 15 minutes. Toney does not explain how he arrived at the conclusion that rounding is performed by punch set rather than total shift time. The data he relies upon does not necessarily point to that conclusion, given that both methods of rounding arrive at an adjusted hours worked calculation of 6 hours and 15 minutes.[4] The flaw in Toney's methodology is clearly demonstrated by a follow-up analysis performed by Home Depot's expert. *See* Supplemental Declaration of G. Edward Anderson, Ph.D., Dkt No. 69-1 ("Supp. Anderson Decl."). Dr. Anderson compared rounding calculations using Toney's methodology and using the total shift method described by

---

[4] Using the total shift time method, actual hours worked is 6 hours and 13 minutes, which rounds to 6 hours and 15 minutes. Adding the rounded hours per punch set yields the same result (4 hours plus 2 hours and 15 minutes equals 6 hours and 15 minutes).

Ms. Barnaby. He found that for three separate pay periods, Toney's methodology yielded a total rounded shift time that differed from the amount of shift time credited to Utne on his pay stubs. *See* Supp. Anderson Decl. and exhibits, Dkt. Nos. 69-1 to 69-3. By adding up the total shift time before rounding, as required by Home Depot policy, Dr. Anderson arrived at the correct amount of time reflected on the pay stubs.

Even if Toney's figures were correctly calculated, Utne has not established a genuine issue of material fact that precludes summary judgment. The rounding policy rounds both up and down, and is thus facially neutral. There is no evidence that the rounding policy is applied differently to Utne or to any of the proposed class members. Home Depot's expert calculations are sufficient to establish that the practice does not systematically undercompensate employees over time. Over the time period analyzed, 6,028 out of the 13,387 sampled employees were positively impacted by rounding and 257 employees experienced no impact. Because these are cumulative figures, it is reasonable to think that "a few more periods of employment may have tilted the total time/compensation tally in the other direction." *See Corbin*, 821 F.3d at 1069. Analysis at the shift and pay period level indicates that the rounding policy produced neutral or overcompensation at a higher rate than undercompensation. *See* Anderson Decl., Dkt. No. 57-1, tbls.2, 3. These figures are consistent with Home Depot's contention that rounding contemplates the possibility that in any given time period, some employees will have net overcompensation and some will have net undercompensation. Given the expected fluctuations with respect to individual employees, shifting the time window even slightly could flip the figures. For example, in the last pay period analyzed, ending May 7, 2017, Utne experienced a net increase of 16 minutes of compensated time due to rounding. Anderson Decl., Dkt. No. 57-1, ¶ 8. Under *See's Candy* and *Corbin*, Home Depot is entitled to summary judgment on these facts.

Utne attempts to distinguish *See's Candy* on the basis that he, unlike the plaintiff in *See's Candy*, is not asserting claims related to a "grace period" policy.[5] In *See's Candy*, the court

---

[5] In *See's Candy*, the defendant allowed employees to voluntarily punch in 10 minutes before their scheduled start time and 10 minutes after their scheduled end time, and to use this unpaid time to

analyzed claims related to the grace period policy separately from claims related to the defendant's rounding policy. Therefore, the absence of a grace period policy here does not render *See's Candy*'s rounding analysis inapplicable. Utne also argues that even if *See's Candy* applies, it goes too far under California law and does not reflect how the California Supreme Court would treat rounding. Utne acknowledges that in the absence of a decision by the state's highest court, "a federal court must predict how the highest state court would decide the issue using intermediate appellate court decision, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Nelson v. City of Irvine*, 143 F.3d 1196, 1206 (9th Cir. 1998). In his opposition, Utne also concedes that "a federal court is obligated to follow the decisions of the state's intermediate appellate courts where there is ***no convincing evidence*** that the state supreme court would decide the matter differently." Opp. at 13 (emphasis in original). Utne evidently believes that this standard favors his view that the California Supreme Court would not follow the decision of the California Court of Appeal. He argues that because there is no evidence that California's wage and hour regulatory framework expressly adopts federal rules regarding rounding, the California Supreme Court would not approve any type of rounding. Utne's argument misses the mark. First, whether California's wage and hour regulatory framework expressly adopts federal rules regarding rounding is not probative of whether rounding is prohibited under California law. Because California law does not address rounding one way or another, courts must ask whether the federal rule is consistent with California wage and hour law. The California Court of Appeal has carefully studied the issue and answered that question in the affirmative. *See See's Candy*, 210 Cal. App. 4th at 901-08. In its decision, the court followed longstanding guidance from California's labor law enforcement agency, which expressly adopted the federal rule in its enforcement manual. *See* Cal. Dep't Lab. Standards Enforcement Policies & Interpretations Manual, § 47.1 (2002). Because Utne has offered no convincing evidence that the highest court of the state would disagree with the

---

pursue personal activities. Pursuant to this policy, employees who punched in early or late were only paid according to their scheduled start/stop times. This type of policy is not at issue in this case.

appellate court's reasoned analysis, it appropriate to defer to that court's conclusion that California adopts the federal rounding standard.

Utne also opposes Home Depot's motion on the grounds that rather than certifying a class of all non-exempt employees, he seeks to certify a class of employees for whom Home Depot's records show that their paid time during the class period was less than the time recorded by Home Depot's timekeeping system. Utne's desire to limit the class definition in this way is expressly foreclosed by *Corbin*, which explained that the federal rounding regulation was not meant to apply individually to each employee. *See* 821 F.3d at 1077. Provided Home Depot's rounding policy does not systematically undercompensate employees over time, Utne cannot defeat summary judgment on his rounding claims by limiting his proposed class to only those employees who happen to come out behind during the class period. As the Ninth Circuit explained in *Corbin*, the federal regulation did not intend to reward strategic pleading where a plaintiff includes only pay periods during which he or she came out behind a few minutes. *See* 821 F.3d at 1077. By that logic, it would make little sense to endorse a pleading strategy that only includes employees that have experienced net undercompensation over a given period of time, ignoring the relevant fact that a comparable number of employees were either overcompensated or appropriately compensated over that same period.

In any case, because certification of Utne's proposed class is not before the Court at this juncture, it is unnecessary to consider Utne's representations about the size of the proposed class and the estimated amount of unpaid wages owed. Utne's discussion of the Rules Enabling Act in this context is similarly misplaced. According to Utne, Home Depot seeks to deny his substantive rights by pointing to "some other employees" who have not been underpaid. This argument must be rejected. Utne has the burden of showing that Home Depot's rounding practice violated his rights in order to recover for the violation. Under state and federal law, that analysis requires an examination of how rounding affects all employees. Although Utne relies upon general statements of the principal that federal rules cannot be used to limit substantive rights, he provides no authority supporting his view that rounding analysis infringes his rights here.

Finally, Home Depot argues that Utne's PAGA claim should be dismissed with prejudice because he failed to plead exhaustion of his administrative remedies under the statute. Utne acknowledges the exhaustion requirement but argues that this defect can be cured by amendment. Because Home Depot has provided no compelling reason why Utne cannot be given leave to amend his complaint to plead exhaustion, the motion to dismiss the PAGA claim is granted with leave to amend.

## V. CONCLUSION

For the reasons stated above, Home Depot's motion for summary judgment as to Utne's rounding claims is granted. The PAGA claim for relief is dismissed in its entirety with leave to amend.

**IT IS SO ORDERED**.

Dated: December 4, 2017

RICHARD SEEBORG
United States District Judge