UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN UTNE,

    Plaintiff,

v.

HOME DEPOT U.S.A., INC.,

    Defendant.

Case No. 16-cv-01854-RS

**ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

**I. INTRODUCTION**

This class action labor dispute arises from the alleged failure of defendant Home Depot U.S.A., Inc. ("Home Depot") to pay its store employees, including named plaintiff John Utne, for the full amount of time worked. In March 2018, Utne's motion to certify two employee classes—the "Lock-In Class" and the "Hourly Employee Class" (collectively, "Plaintiffs")—was granted. Plaintiffs now move for partial summary judgment that Home Depot is liable (1) to the Lock-In Class for employee time spent waiting to be let out of the store after clocking out and (2) to the Hourly Employee Class for time spent walking to the back of the store and donning the required orange work aprons before clocking in. Home Depot opposes this motion and seeks partial summary judgment that it is *not* liable to the Hourly Employee Class for the pre-shift time described above, or for the waiting time[1] and wage statement claims that derive therefrom. For the

---

[1] For the purposes of this order, the "waiting time" claim refers to the Hourly Employee Classes' Third Claim for failure to pay all final wages at the time of employee termination. This is not to be confused with the Lock-In Class's First Claim for failure to pay workers for time spent waiting to

reasons set forth below, Plaintiffs' motion is denied. Home Depot's motion for partial summary judgment is granted with respect to the Hourly Employee Class's waiting time and wage statement claims, but is otherwise denied.[2]

**II. BACKGROUND**

**A. Procedural History**

In March 2016, Utne filed suit against Home Depot in the Superior Court of California seeking recovery of unpaid wages and derivative penalties on behalf of himself and other Home Depot store employees in California. The action was subsequently removed to federal court. The operative Third Amended Complaint ("TAC") advances five claims under California Law for (1) failure to pay hourly wages, Cal. Lab. Code §§ 223, 510, 1194, 1197, 1198; (2) failure to provide accurate written wage statements, *id.* § 226; (3) failure timely to pay all wages at the termination of employment, *id.* § 201-203; (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; and (5) civil penalties arising from Home Depot's alleged violation of various provisions of the state labor code, Cal. Lab. Code § 2698 *et seq.*[3]

On March 30, 2018, two classes were certified: (1) a Lock-In Class made up of "[a]ll individuals employed by Home Depot in hourly-paid or non-exempt positions in Home Depot stores in California at any time since March 8, 2012, and who worked at least one shift ending after the time that the Home Depot store was scheduled to close to the public for the evening," and (2) an Hourly Employee Class made up of "[a]ll individuals employed by Home Depot in hourly-paid or non-exempt positions in California at any time since March 8, 2012." Order Granting

---

be released from the store.

[2] Home Depot also moves to strike 22 of the 47 declarations submitted by Plaintiffs in support of their motion for partial summary judgment. The outcome of Plaintiffs' motion is the same regardless of whether these declarations are considered, accordingly the motion to strike is denied as moot.

[3] On December 4, 2017, partial summary judgment was granted in Home Depot's favor, but only to the extent that Plaintiffs' claims were premised on Home Depot's rounding practices when keeping time. That order has little bearing on the motions at issue here.

Class Cert. 1, 11.

**B. Factual Background for Hourly Employee Class**

The primary question with respect to the Hourly Employee Class is whether workers were subject to Home Depot's control from the time they entered the store to the time they clocked-in. The parties agree that both the primary clock-in machine and the employee lockers where the orange aprons are stored are typically located in the back of the store. It is possible, however, for store employees to clock in and out from computer terminals located near store entrances, Pennington Tr. 25:9-14,[4] and several class members testified to using these terminals to clock in or out. *See, e.g.*, Navarrete Decl. ¶¶ 2, 6; Brown Decl. ¶ 2; Chavez Decl. ¶ 3; Bovee Decl. ¶¶ 3, 5; *see also* Alvarez Tr. 72:12-74:25.[5]

It is also undisputed that Home Depot maintains a written policy which states: "Associates are not permitted to remain in the store unless they are working or shopping." Leviant Decl. Ex. 4. The parties dispute, however, whether this policy applies to the beginning of the workday. When asked to clarify this issue, Home Depot's Rule 30(b)(6) witness, Barbara Pennington, testified: "I think the company's intent with respect to this language was really designed for the end of the day, but it could apply at the beginning of the day." Pennington Tr. 39:2-13. Pennington gave two reasons for the policy, namely preventing employees from inadvertently performing work for which they were not being compensated and ensuring an accurate head count of employees in the event of an emergency evacuation. *Id.* 37:18-22, 38:3-11.

Home Depot maintains another written policy directing employees to put on their orange work aprons before clocking in. The policy states: "Remember that you should arrive fully prepared to begin your shift. In stores, associates should put on their aprons just before clocking

---

[4] Excerpts from the Barbara Pennington's deposition transcript can be found either (1) under Docket 77 as Exhibit A to declaration of Donna Mezias or (2) under Docket 131 as Exhibit 1 to the declaration of Thomas Segal.

[5] The foregoing declarations can be found under Dockets 78 and 79. The Alvarez deposition transcript is filed under Docket 126 as Tab 9 to the Compendium of Evidence.

in." Leviant Decl. Ex. 4. Pennington similarly testified that "[w]hen an associate arrives at the start of their shift, they need to go to the back, get their apron, put it on, go to the time clock and clock in." Pennington Tr. 37:7-10.

Finally, Home Depot proffers testimony from several class members that they routinely engaged in personal activity while waiting to clock in, including watching television, doing homework, talking on the phone, checking social media, drinking coffee, and chatting with co-workers in the break room. A few class members also testified to being generally unaware of restrictions on their conduct while waiting to clock in. *See* Stith Tr. 77:10-18; Alvarez Tr. 50:3-17. Utne indicated, however, that employees were prohibited from checking their phones while in the store and that this was a "[f]iring offense." Utne Tr. 92:11-93:9.[6]

### C. Factual Background for Lock-In Class

Once Home Depot stores close to the public for the night, the store's exterior doors are locked and a key is required to enter or exit the building. Certain designated key-carrying employees or managers are tasked with letting employees out of the store. It is undisputed that, on some occasions, this procedure has resulted in employees being forced to wait until a manager was available to let them out. Pennington Tr. 51:19-24 (explaining that employees can "go to the front of the store and wait for the manager or page the manager" in order to be let out of the store).[7] Several class members testify, however, that they were almost always let out of the store without any wait. *See e.g.*, Henley Tr. 44:4-46:18; Andia Tr. 102:10-103:12; De La Rosa Decl. ¶ 5; Mothershed Decl. ¶ 5.[8]

---

[6] The Utne, Stith, and Alvarez depositions can be found under Docket 126 at Tabs 2, 6, and 9 to the Compendium of Evidence.

[7] While Home Depot frames this as a contested issue, the testimony they provide casts doubt on the *extent* to which employees were forced to wait, not on the fact that some employees were on some occasions forced to wait. Indeed, at least one of the declarations upon which the company relies expressly states that the declarant was forced to wait to be released on one occasion. De La Rosa Decl. ¶ 5 ("The longest I have ever had to wait for the door to be unlocked is about five minutes.").

[8] The Andia and Henley depositions can be found under Docket 126 at Tabs 10 and 28. The De La

There is also conflicting evidence regarding the extent to which employee time spent waiting to leave the store was unpaid. While some employees clocked out in the rear of the store then waited to be released, other class members clocked out near the front of the store right before exiting the building. Neither party definitively establishes the extent to which class members were permitted, or advised, to clock out at the front of the store. Home Depot policy also allowed employees to report time not captured by the timeclock by submitting a time adjustment form. Pennington Tr. 64:4-15; *see also* Utne Tr. 196:19-200:14; Ceja Decl. ¶ 7; Marmolejo Decl. ¶ 5; Lee Tr. 68:4-69:5 (explaining that he submitted a correction form when forced to wait to be let out).[9] Several Home Depot managers also testify to advising employees to submit time adjustment forms if they are forced to wait at the exit before being released. Some employees, however, chose not to submit correction forms because they considered the amount of time insignificant. Others stated that they were unaware they could be compensated for the wait time.

### III. LEGAL STANDARD

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must ultimately decide "whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). When making this evaluation, courts draw all reasonable inferences in favor of the non-moving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520-21 (1991).

### IV. DISCUSSION

---

Rosa and Mothershed declarations can be found under Docket 79 at Tabs 35 and 52.

[9] The Lee deposition can be found under Docket 126 at Tab 11. The Ceja and Marmolejo declarations can be found under Dockets 78 and 79.

Under California law, a plaintiff seeking to recover for unpaid work time bears the burden of proving he or she was engaged, suffered, or permitted to work without compensation. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 586 (Cal. 2000). This standard can be met by showing either (1) the employee was "subject to the control of the employer" or (2) the employee was "suffered or permitted to work." *Taylor v. Cox Commc'n Cal., LLC*, 283 F. Supp. 3d 881, 886 (C.D. Cal. 2017) (quoting *Morrillion*, 22 Cal. 4th at 582). Under the "control" prong of this test, the "level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative." *Morillion*, 22 Cal. 4th at 587. The plaintiff must also show the employer "knew or should have known off-the-clock work was occurring." *Brinker Rest. Corp. v. Super Ct.*, 53 Cal. 4th 1004, 1051-52 (Cal. 2012); *see also Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 938 (N.D. Cal. 2016).

### A. Liability to Hourly Employee Class

Plaintiffs seek a partial summary judgment finding that Home Depot is liable to the Hourly Employee Class for time spent walking to the back of the store and donning the required orange work aprons before clocking in. Home Depot seeks partial summary judgment that the company is *not* liable for failure to pay employees for this time, or for the waiting time and wage statement claims that derive therefrom. In the alternative, Home Depot seeks partial summary judgment with respect to the waiting time and wage statement claims under the good faith defense.

#### 1. First Claim: Failure to Pay for Pre-Shift Time

Both parties seek partial summary judgment regarding whether Home Depot must compensate employees for the time it takes them to walk from the store entrance to the lockers in the back of the store, don their orange work aprons, and then clock in. The key question is whether members of the Hourly Employee Class were subject to Home Depot's control from the time they enter the store to the moment they clock in. As explained in the March 2018 order granting class certification, this is a mixed question of law and fact. Order Granting Class Cert. 7.

Plaintiffs argue Home Depot's policy prohibited employees from "remaining" in the store unless they are working or shopping, combined with its policy instructing employees to put on

their aprons before clocking in shows employees are subject to Home Depot's control immediately upon entering the store. In Home Depot's view, however, the fact that numerous employees engaged in personal activity before starting their shifts definitively shows employees were *not* subject to Home Depot's control during this pre-shift time. Accordingly, Home Depot argues, it is not liable for failure to pay for this time, or for the waiting time and wage penalty claims which derive from this alleged failure to pay.

Both parties' arguments are unavailing. First, there is a factual dispute regarding whether Home Depot's policy prohibiting employees from remaining in the store applied to the beginning of the workday. Pennington's testimony on this point is ambiguous. That class members admit to spending time on personal activity on Home Depot's premises while waiting to begin their shifts further suggests this policy may indeed have applied exclusively to the end of the work day. Ultimately, however, this question of fact is reasonably subject to dispute. If indeed employees were prohibited from arriving early and engaging in leisure activity while waiting to begin work, or prohibited from using their cell phones in the store, this would weigh in favor of a finding that they are subject to Home Depot's control immediately upon their arrival. By contrast, if this policy applied exclusively to the end of the day, a reasonable jury could conclude Plaintiffs were not subject to Home Depot's control immediately upon entering the store.

While Plaintiffs try to characterize any time class members may have spent on personal activities as a damages issue, this personal activity sheds light on whether Home Depot actually exercised control over employees as soon as they entered the store. Furthermore, standing on its own, Home Depot's written policy requiring employees to put on their aprons "just before clocking in" does not necessarily render class members' subject to the company's control *as soon as they enter the store*. Plaintiffs' final argument is that Home Depot must compensate employees for this time because otherwise workers "could be required to walk 20 uncompensated minutes daily to a time clock in the back of the warehouse." Plaintiffs' Reply 11. This argument is similarly unavailing.

The fact that an employee must cross an employer's premises in order to clock in for work,

ORDER ON CROSS MOTIONS
CASE NO. 16-cv-01854-RS
7

or after clocking out for the day, does not necessarily render the time it takes to reach the time clock compensable. *See Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 265 (Cal. Ct. App. 2006). The named plaintiff in *Overton* was employed at Disneyland and, due to expansion of the park, was assigned an employee parking spot a mile away from the employee entrance. *Id.* at 265. Disney provided a free shuttle from the parking lot to the employee entrance where the timeclock was located. *Id.* at 265-66. The California Court of Appeal held that the time spent riding the free shuttle was not compensable because Disney employees were not required to take the shuttle and could avail themselves of other forms of transportation that bypassed the employee parking lot. *Id.* at 271. This was so even though employees ostensibly had to travel over Disney property in order to reach the timeclock, no matter which form of transportation they took.

Similarly, a district court in this district has held that employees who were subject to a security inspection upon leaving their place of work could not receive compensation for the time spent "pack[ing] up and travel[ing] to the front of the store after clocking out" because the employees were free to engage in personal activities during this time—such as shopping, using the bathroom, or calling for transportation—and would have to pack up and leave regardless of whether they were subject to search at the exit. *Chavez v. Converse, Inc.*, No. 15-cv-03746, 2017 WL 4552083, at *9 (N.D. Cal. Oct. 11, 2017). This is not to say an employee could never be deemed under the control of an employer while crossing the employer's premises to clock in, simply that additional evidence of control may be necessary. As explained above, the additional indicia of control in this case are subject to dispute. Accordingly, both motions for summary judgment regarding Home Depot's liability to pay for pre-shift time are denied.

This does not, however, fully dispose of Home Depot's motion. In the event the Hourly Employee Class's First Claim is allowed to proceed, Home Depot independently seeks partial summary judgment with respect to the class's waiting time (Third Claim) and wage statement claims (Second Claim) theories of recovery.

### 2. **Third Claim: Waiting Time Penalties**

Section 203 of the California Labor code provides for penalties where an employer

"willfully" failed to pay wages at the time an employee is terminated. Cal. Lab. Code § 203. The California Department of Industrial Relations defines the term "willful" as used in Section 203 to mean the absence of a good faith dispute. 8 Cal. Code Regs. § 13520(a). A good faith dispute exists where "an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (Cal. Ct. App. 2008). Legal uncertainty as to the merits of a claim may provide a presumption of good faith. *Id.* at 1202; *see also Hildebrandt v. TWC Admin. LLC*, No. EDCV 13-02276, 2015 WL 12911754, at *18 (C.D. Cal. March 18, 2015). By contrast, defenses that are "unsupported by any evidence, are unreasonable, or are presented in bad faith" do not present a good faith dispute. *Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859, 873-74 (Cal. Ct. App. 2018).

Home Depot argues persuasively that Plaintiffs cannot recover under Sections 203 because a good faith dispute exists with respect to the compensability of the pre-shift time at issue. As explained in Part IV.A.1, *supra*, there is a material dispute regarding whether members of the Hourly Employee Class were in fact subject to Home Depot's control from the time they entered the store to the time they clocked in. Although Plaintiffs raise the specter of bad faith conduct on Home Depot's part, they point to no evidence of bad faith aside from the parties' conflicting interpretations of Home Depot's policy regarding employees remaining in the store outside of work hours. This is insufficient to support a finding of bad faith. Accordingly, summary judgment is granted in Home Depot's favor with respect to this claim.

### 3. Second Claim: Wage Statement Penalties

While both parties agree the good faith defense applies to claims arising under Section 203, they disagree about the applicability of this defense to Section 226. This section provides for penalties where the plaintiff establishes an employer's "knowing and intentional" failure to provide accurate wage statements. Cal. Lab. Code § 226(e). The statute clarifies that the existence of a "knowing and intentional failure" does not include "an isolated and unintentional payroll error due to a clerical or inadvertent mistake" and may depend in part on whether the employer has

adopted "a set of policies, procedures, and practices that fully comply with this section." *Id.* § 226(e)(3).

District courts in California are divided over whether the good faith defense applies to Section 226,[10] while the California Court of Appeal has upheld application of the good faith defense to such claims. *Amaral*, 163 Cal. App. 4th at 1201-04. The opinions holding that the good faith defense applies to Section 226 are persuasive. As explained in *Boyd v. Bank of Am. Corp.*, the "knowing and intentional" standard requires something more than a mere violation of Section 226(a). 109 F. Supp. 3d 1273, 1308 (C.D. Cal. 2015) ("Penalizing employers who, in good faith but ultimately incorrectly, believe that their employees are exempt, and on this basis do not comply with § 226, is inconsistent with the requirement that a violation be "knowing and intentional."). Accordingly, a good faith defense regarding the amount of wages owed precludes a finding of liability under Section 226 based an employer's failure to include the disputed wages in the wage statement. Such an omission is not a "knowing and intentional" failure to provide an accurate wage statement.

Furthermore, the "knowing and intentional" standard applicable to Section 226 is closely related to the "willfulness" standard which governs Section 203. *See Woods*, 2015 WL 2453202, at *4 (discussing the overlap between the definitions of the terms "willful" and "intentional" under California law). Given the similarity between these two governing standards, it is only logical that the good faith defense would apply to both Sections, not merely to Section 203. As explained above, Home Depot has advanced a good faith defense with respect to the alleged pre-shift work time. Home Depot's motion for summary judgment is therefore granted with respect to the Section 226 claim.

---

[10] *Compare Villalpando v. Exel Direct Inc.*, No. 12-cv-04137, 2015 WL 5179486, at *36-37 (N.D. Cal. Sept. 3, 2015), *Woods v. Vector Mktg. Corp.*, No. C-14-0264, 2015 WL 2453202, at *2-4 (N.D. Cal. May 22, 2015), *Pedroza v. PetSmart, Inc.*, No. ED CV 11-298, 2012 WL 9506073, at *5 n.6 (C.D. Cal. June 14, 2012) (collecting cases), *and Dalton v. Lee Publ'ns, Inc.*, No. 08cv1072, 2011 WL 1045107, at *5-6 (S.D. Cal. March. 22, 2011), *with Cabardo v. Patacsil*, 248 F. Supp. 3d 1002, 1010 (E.D. Cal. 2017); *Bernstein v. Virgin Am., Inc.*, 227 F. Supp. 3d 1049, 1076 (N.D. Cal. 2017); *Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1133-34 (E.D. Cal. 2015).

**B. Liability to Lock-In Class**

Plaintiffs alone move for partial summary judgment with respect to the Lock-In Class. They specifically seek a finding that Home Depot is liable to the class for employee time spent waiting to be let out of the store after clocking out. Home Depot's security policy requires the doors of the store to be locked to the public after closing, allegedly resulting in employees having to wait to be let out of the store after clocking out. In Plaintiffs' view, this time is compensable because employees remain under Home Depot's control until they are released from the building. Home Depot responds that disputes of fact exist as to (1) whether members of the Lock-In Class in fact had to wait to be released, and (2) whether Home Depot knew, or should have known, employees were waiting without compensation. Home Depot's argument is ultimately the more persuasive.

While it is undisputed that at least some class members were forced to wait to be released at the end of their shifts, others testify they were let out immediately after clocking out. Moreover, class member testimony reveals that at least some class members were able to clock out at the front of the store immediately before leaving, or to submit time adjustment forms to account for time spent waiting to be released. In light of these divergent experiences, one cannot safely "extrapolate[e] the testimony of some class members to the class as a whole" at the summary judgment stage. *Brady v. Deloitte & Touche LLP*, No. C 08-177, 2012 WL 1059694, at *6 & n.3 (N.D. Cal. Mar. 27, 2012). In other words, viewing the evidence in the light most favorable to Home Depot, a reasonable fact-finder could conclude members of the Lock-In Class were not, as a class, subject to a policy of being forced to wait on Home Depot's premises without pay.

Plaintiffs argue conflicting testimony regarding whether class members were forced to wait to be let out of the store does not defeat their motion because they are merely seeking a "threshold determination of whether [Home Depot's] policy is unlawful." Plaintiffs' Reply 15 (citing *Dilts v. Penske Logistics, LLC*, 188 F. Supp. 3d 1016 (S.D. Cal. 2016)). Here, however, the lawfulness of the policy turns upon the degree to which it resulted in class members being forced to wait without pay. In other words, Plaintiffs' theory of liability rests upon factual findings about the practical

effect of Home Depot's lock-in policy rather than upon a facial analysis of the policy.

Even if Plaintiffs could show the Lock-In Class was forced to wait without pay, they fail to show Home Depot knew, or should have known, employees were not being compensated for any wait time. As explained above, some employees were able to clock out at the front of the stores immediately before leaving, whereas others submitted time adjustment forms when their wait time was not captured by the timeclock. Plaintiffs point to testimony that certain class members were not informed they could be paid for this time as evidence that Home Depot should have known this time was not being properly captured. They further argue Home Depot's "makeshift" and "sporadic" efforts to ensure employees were paid for wait time demonstrates their awareness of the problem. Plaintiffs' Reply 13. Is it not clear, however, that these alternative methods of recording time were used only sporadically. Neither party paints a clear picture of how common it was for employees to use these alternative methods, or whether these options were well-advertised. Accordingly, the question whether Home Depot should have known that, despite these alternative time capture methods, employees were not being compensated for their wait time cannot be definitively resolved at this stage.

Finally, Plaintiffs argue that, under California law, employers cannot shift the burden of keeping track of small time increments to employees, *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 848, and therefore the time adjustment process cannot excuse Home Depot's failure to pay employees for uncaptured wait time. This argument misses the mark. First, the portion of *Troester* cited by Plaintiffs stands for the position that the de minimis exception for employee pay does not apply to regularly occurring work time that can reasonably be estimated or captured. *Id.* ("We recognize that one of the main impetuses behind the de minimis doctrine in wage cases is the practical administrative difficulty of recording small amounts of time for payroll purposes . . . . But employers are in a better position than employees to devise alternatives that would permit the tracking of small amounts of regularly occurring work time.") (quotation omitted).

The de minimis exception simply has no bearing on the present analysis. Home Depot's time adjustment process is relevant only to the extent it helps establish whether Home Depot knew

or should have known employee wait time was not being properly compensated. As explained above, this is a disputed factual question that must be resolved at trial. Accordingly, Plaintiffs' motion for summary judgment with respect to the Lock-In Class is denied.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for partial summary judgment is denied. Home Depot's motion for partial summary judgment is granted with respect to the Hourly Employees' waiting time and wage statement claims, but is otherwise denied.[11]

**IT IS SO ORDERED**.

Dated: July 11, 2019

_____
RICHARD SEEBORG
United States District Judge

---

[11] The parties are reminded that e-filed documents must include text search capabilities, unless the filer only has access to a paper copy of the document. Civ. Local R. 5-1(e)(2). This helps conserve Court resources and increase the accuracy and thoroughness of decisions.