UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN UTNE,<br><br>    Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>    Defendant. | Case No. 16-cv-01854-RS<br><br>**ORDER ON MOTIONS TO EXCLUDE EXPERT REPORTS AND MOTION TO DECERTIFY CLASS** |

## I. Introduction

Following the close of discovery in this class action alleging violations of California wage and hour laws, Lead Plaintiff John Utne and Defendant Home Depot U.S.A., Inc. ("Home Depot") brought a series of motions. This order addresses three of those motions: Plaintiff's motion to exclude the expert report of Robert Crandall pursuant to Federal Rule of Evidence 702, Home Depot's motion to exclude the reports of two of Plaintiff's expert witnesses pursuant to Federal Rules of Civil Procedure 26 and 37, and Home Depot's motion to decertify the class.[1] For all the foregoing reasons, Plaintiff's motion to exclude the Crandall Report is granted in part and denied in part. Home Depot's motion to exclude two expert reports is denied. Defendant's motion to

---

[1] This order is filed concurrently with the order addressing Defendant's motion for judgment on the pleadings, Plaintiff's motion for leave to file an amended complaint, and Plaintiff's motion for sanctions.

decertify the class is denied.[2]

## II. Factual and Procedural Background

In March 2016, Utne filed suit against Home Depot in the Superior Court of California seeking recovery of unpaid wages and derivative penalties on behalf of himself and other Home Depot store employees in California. The action was subsequently removed to federal court. The operative Third Amended Complaint ("TAC") advances five claims under California Law for (1) failure to pay hourly wages, Cal. Lab. Code §§ 223, 510, 1194, 1197, 1198; (2) failure to provide accurate written wage statements, *id.* § 226; (3) failure timely to pay all wages at the termination of employment, *id.* § 201-203; (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; and (5) civil penalties arising from Home Depot's alleged violation of various provisions of the state labor code, Cal. Lab. Code § 2698 *et seq*.

On March 30, 2018, two classes were certified: (1) a Lock-In Class made up of "[a]ll individuals employed by Home Depot in hourly-paid or non-exempt positions in Home Depot stores in California at any time since March 8, 2012, and who worked at least one shift ending after the time that the Home Depot store was scheduled to close to the public for the evening," and (2) an Hourly Employee Class made up of "[a]ll individuals employed by Home Depot in hourly paid or non-exempt positions in California at any time since March 8, 2012 Order Granting Motion for Class Certification, pp. 1, 11. On July 11, 2019, partial summary judgment was granted to Home Depot as to the Hourly Employees' waiting time penalties claim and wage statement penalties claims.[3] Order on Cross Motions for Summary Judgment, pp. 9-10.

---

[2] Defendant's administrative motions for leave to file materials under seal, Dkt. Nos. 242 and 253, are granted.

[3] On December 4, 2017, partial summary judgment was granted in Home Depot's favor, but only to the extent that Plaintiffs' claims were premised on Home Depot's rounding practices when keeping time.

ORDER
CASE NO. 16-cv-01854-RS

**III. Plaintiff's Motion to Exclude Report of Robert Crandall Pursuant to Rule 702**

**A. Legal Standard**

Rule 702 of the Federal Rules of Evidence requires that an expert witness's testimony be qualified by "knowledge, skill, experience, training, or education[.]" Fed R. Evid. 702. Even if a witness is qualified as an expert in a particular field, any scientific, technical, or specialized testimony is admissible only if it (a) "will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "is based upon sufficient facts or data," (c) "is the product of reliable principles and methods," and (d) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

Rule 702 does not permit irrelevant or unreliable testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Expert opinions are relevant if the knowledge underlying them has a "valid connection to the pertinent inquiry." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (internal quotation marks and alteration omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 590. Expert opinion testimony is reliable if such knowledge has a "basis in the knowledge and experience of [the relevant] discipline." *Id.* at 592. Courts should consider the following factors when evaluating whether an expert's proposed testimony is reliable: (1) "whether a theory or technique . . . can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication[,]" (3) the known or potential error rate of the particular scientific theory or technique, and (4) the degree to which the scientific technique or theory is accepted in a relevant scientific community. *Id.* at 593-94. This list is not exhaustive, however, and the standard is flexible. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999). The *Daubert* inquiry "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Id.* at 141.

Courts may not exclude testimony because it is impeachable. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The focus of the inquiry is thus on the principles and methodology employed, not the conclusions reached by the expert. *See id.* at 595. Ultimately, the purpose of the assessment is to exclude speculative or unreliable testimony to ensure accurate, unbiased decision-making by the trier of fact. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho*, 526 U.S. at 157 (internal quotation marks and citation omitted).

### B. Discussion

Plaintiff moves to exclude Defendant's expert, Robert Crandall. Plaintiff's concerns largely go to weight, not admissibility, especially when considering that the instant motion concerns consideration of Crandall's opinions by the Court for the motion for class decertification, rather than what opinions will be presented to a jury.[4] *See Alaska Rent-A-Car*, 738 F.3d at 969 (explaining that the purpose of *Daubert* is "to screen the jury from unreliable nonsense opinions"). As to Plaintiff's concerns about how Crandall's methods compare to other time and motion studies, whether he followed all best practices for observational studies, his sampling of stores, and his failure to provide margins of error or to address possible impact of camera installation on his study, the motion is denied. For the motion to decertify the class, the Court may discount or assign low weight to Crandall's opinion as it relates to these aspects of the motion. Plaintiff may re-raise these arguments should he file a motion to exclude this testimony at trial.

Crandall's opinions on the percentage of employees engaged in personal activities on their pre-shift walk to the back of the store or time in the break room pre-shift, however, are excluded.[5] Crandall concluded that "personal activities of some kind were observed for 5,569 (67.7%) of shift

---

[4] In his reply brief, Plaintiff invites the Court to rule on the admissibility of Crandall's opinions for both the motion for class decertification and for trial. As it is unclear from Plaintiff's motion that Plaintiff was seeking to exclude Crandall from trial at this stage as well, the Court only decides the admissibility of Crandall's opinions for the purpose of the motion for class decertification.

[5] These opinions concern the Hourly Employee Class.

start subjects before they clocked in to the start their shift." Crandall Declaration, p. 11. Crandall's study categorizes a variety of types of activity—including talking to colleagues and using personal cellphones—as personal activity. For many of these categorizations, though, Crandall cannot know whether an employee was engaged in work activity or not based solely on the video observation conducted. A conversation with a colleague could have concerned work issues, such as a request to start the shift off completing a certain task or explaining an issue at the store, rather than true non-work time. Similarly, time spent on the phone could have involved talking with or texting a colleague about work matters.

A court in the District of New Jersey excluded Crandall's opinions for similar reasons. In *Goodman v. Burlington Coat Factory*, No. CV 11-4395 (JHR), 2019 WL 4567366 (D.N.J. Sept. 20, 2019), Crandall had sought to classify employee actions as managerial or non-managerial based on an observational study. Some of the classifications were premised on observations of physical activities and conversations between employees. The observers, however, could not hear the conversations between the employees. The district court noted that "observing without information on the context of conversations is insufficient to conclude that the purpose or intent of the action is managerial." 2019 WL 4567366, at *15. After all, "conversations between two people at work, regardless of their hierarchal relationship, could be anything from friendly small talk, to mentoring, to managing." *Id.*

Similarly, it is impossible to know here whether all actions observed in the Crandall study that are classified as personal activities are truly personal. Some observed activities—such as playing cards in the break room—can easily be described as a personal activity based on video observation alone. Crandall, however, only breaks down activities in his report as personal and work-related, and thus these clearly personal activities cannot be broken out from the instances in which it is unknown whether the activity was personal or work-related. The lack of detail in the classification of "personal" activities means that Crandall's opinion on the percent of employees who spent time on personal activities is not "based on sufficient facts or data." Fed. R. Evid. 702(b). Crandall's conclusions about the percentage of employees who spent time on personal

activities before clocking in are therefore excluded.

Crandall also provided numerous opinions under the header of "Discussion of Potential Trial Plan Issues." He includes opinions such as that "the observation study results indicate that there are individualized issues that cannot be managed without collecting detailed individualized facts and data." Crandall Report, p. 31. "[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). Courts have previously excluded this kind of testimony from Crandall, noting that his testimony has at times "read[] more like lawyer's argument" than an expert report. *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 49 (S.D.N.Y. 2016) (striking various portions of Crandall's declaration, including a conclusion that "this data suggests that one would need to collect individualized, person specific experiences in order to make reliable liability determinations"). Thus, the opinions Plaintiff has highlighted in the "Discussion of Potential Trial Plan Issues" in the Crandall Declaration are excluded, as are all other opinions about the appropriateness of class-wide determination of liability or damages. Plaintiff's motion is therefore granted as to Crandall's opinions on the percentage of employees who spent pre-shift time on personal activities and Crandall's improper legal opinions, and denied in all other respects.

**IV. Defendant's Motion to Exclude Expert Reports Pursuant to Rules 26 and 37**

Defendant moves to exclude selected reports of two of Plaintiff's experts, Dr. Jon A. Krosnick and James Toney, for failure to produce required documents supporting their opinions. For the reasons explained below, the motion is denied as to both experts.

**A. Legal Standard**

Federal Rule of Civil Procedure 26 requires a party to produce all "facts or data considered by [a designated expert witness] in forming" their opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii); *see also Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) ("[I]n federal court . . . an expert witness must produce all data she has considered in reaching her conclusions."). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

### B. Dr. Jon A. Krosnick

Home Depot's concerns with the disclosure of materials connected to Dr. Krosnick's report relate to the cognitive pretesting done by Dr. Krosnick before finalizing his survey questions. Cognitive pretesting is a process of testing a survey or questionnaire to identify poorly worded questions or other concerns with the survey. Dr. Krosnick and his team conducted 59 cognitive pretesting interviews. Dr. Krosnick has testified that no one on his team took notes during those interviews, and that he did not save the draft versions of the survey. Home Depot frames Dr. Krosnick's failure to take notes or save draft versions as document destruction, and argues this "destruction" will "prevent[] meaningful examination on issues at the core of his opinions." Motion to Exclude Expert Reports, p. 2. Home Depot seeks to exclude Dr. Krosnick's first and third expert reports, which rely on the survey results.

Plaintiff seeks to analogize Dr. Krosnick's draft survey to a draft expert report that a party is not under an obligation to disclose. Home Depot characterizes the draft survey used in cognitive pretesting as part of the information Dr. Krosnick relied upon to develop his opinion. *See, e.g., In re Application of Republic of Ecuador*, 280 F.R.D. 506, 513 (N.D. Cal. 2012), *aff'd sub nom. Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir. 2014) (explaining that work product protections "do[] not extend to the expert's own development of the opinions to be presented outside of draft reports"). Neither comparison is apt. Dr. Krosnick's prior drafts of the survey are not akin to a draft expert report, because they are not drafts of his opinions, but rather drafts of the tool he used to then produce his opinion. Moreover, the draft surveys also do not contain information Dr. Krosnick relied on to develop his opinion. His opinions are based on the results of the implemented survey—a survey Home Depot has been able to review and assess for any possible bias contained within the questions.

As the drafts of the surveys are not "facts or data" considered by Dr. Krosnick in forming his opinion, Fed. R. Civ. P. 26(a)(2)(B)(ii), exclusion is not appropriate. At trial, Home Depot may

1   cross-examine Dr. Krosnick about the questions in his survey, any concerns it has with the
2   questions or survey methodology, and the failure to keep drafts while refining his survey. The
3   motion to exclude the First and Third Reports of Dr. Krosnick is therefore denied.

### C. James Toney

Toney is an expert retained by Plaintiff to opine on the number of unpaid hours and the amount of unpaid wages associated with pre-shift walking time and post-shift waits for the exit doors to be unlocked, among other topics. He provides calculations addressing these issues in a Supplemental Report. To produce these calculations, he relied on spreadsheets based on data produced by Home Depot, for which Dr. Krosnick then created an algorithm to analyze. After some back and forth with opposing counsel, Plaintiff did not provide the spreadsheets underlying Toney's calculations until April 5, 2022, the day after Home Depot filed the instant motion. Home Depot had access to the underlying data used to create the spreadsheets—which was its own data—and Plaintiff had previously disclosed Dr. Krosnick's algorithm which processed the raw data into the spreadsheets used by Toney.

Any failure to produce the spreadsheets was substantially justified and harmless. *See* Fed. R. Civ. P. 37(c)(1) (providing exception to exclusion when failure to disclose "was substantially justified or is harmless"). Plaintiff has demonstrated that there was some confusion over what materials Defendant was requesting, and then quickly produced the materials once that confusion was resolved. Further, Home Depot had access to both the underlying raw data and the computer program used to process that data to produce the spreadsheets used by Toney. Therefore, exclusion is not appropriate, and the motion to exclude the Supplemental Report of James Toney is denied.

### V. Motion for Class Decertification

### A. Legal Standard

Under Federal Rule of Civil Procedure 23(c)(1)(C), "[a] district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). The standard used to review a motion to decertify is the same standard used when reviewing a motion for class certification. *Ries v. Arizona Bev. USA LLC*, No. 10-01139, 2013 WL 1287416, at *3 (N.D. Cal.

March 28, 2013); *see also Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011). Still, a motion for decertification will generally only succeed where there has been some change in the law or facts that justifies reversing the initial certification decision. *In re Myford Touch Consumer Litig.*, No. 13-cv-03072, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018).

A plaintiff seeking class certification must satisfy all four requirements set forth in Rule 23(a) and must also satisfy the requirements of Rule 23(b)(1), 23(b)(2), or 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Among other requirements in Rule 23(a), a plaintiff must show that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(b). A plaintiff seeking to satisfy Rule 23(b)(3) must specifically establish (1) common questions predominate over questions affecting only individual class members, and (2) a class action is superior to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

**B. California Law Concerning Unpaid Work Time**

Under California law, a plaintiff seeking to recover for unpaid work time bears the burden of proving he or she was engaged, suffered, or permitted to work without compensation. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 586 (2000). This standard can be met by showing either (1) the employee was "subject to the control of the employer" or (2) the employee was "suffered or permitted to work[.]" *Taylor v. Cox Commc'n Cal., LLC*, 283 F. Supp. 3d 881, 886 (C.D. Cal. 2017) (quoting *Morillion*, 22 Cal. 4th at 582). Under the "control" prong of this test, the "level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative." *Morillion*, 22 Cal. 4th at 587. The plaintiff must also show the employer "knew or should have known off-the-clock work was occurring." *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1051 (2012); *see also Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 938 (N.D. Cal. 2016).

**C. Discussion**

Home Depot challenges the class certification decision as to both the Hourly Wage Class and the Lock-In Class. As to both classes, Home Depot argues that new evidence developed since the class certification decision means that Plaintiff has not satisfied the commonality requirement

ORDER
CASE NO. 16-cv-01854-RS

9

of Rule 23(a) or the predominance requirement of Rule 23(b) as to either class. Home Depot also submitted a supplemental brief arguing that decertification is required under the Supreme Court's recent decision in *TransUnion v. Ramirez*, 141 S.Ct. 2190 (2021).

### A. Hourly Employee Class

This class is premised on two types of pre-shift activities. First, Plaintiff alleges that workers were required to clock in in the back of the store, and workers were under Home Depot's control from their walk from the front of the store to the break room in the back. Second, Plaintiff alleges that Home Depot has a policy of requiring its workers to don their aprons before clocking in. These claims are partially rooted in statements found in guides Home Depot produced for new workers: one which stated that associates should arrive "fully prepared to begin [their] shift" and "should put on their aprons just before clocking in," and another which stated that "[a]ssociates are not permitted to remain in the store unless they are working or shopping."

Under California law, "hours worked" is defined as (1) time during which an employee is subject to employer control or (2) work time of which the employer has actual or constructive knowledge. *See Morillion*, 22 Cal. 4th at 582. As this Court described when ruling on the motion for class certification, "because Utne does not allege that putative class members are performing any specific work tasks between the time they enter the Home Depot store and the time they clock in (aside from donning their aprons), the common question is whether they are under Home Depot's 'control.'" Order Granting Motion for Class Certification, p. 6.

The question of whether employees are under Home Depot's control when they walk to the back of the store to clock in remains a mixed question of law and fact, and that question is common to the class. As explained when addressing Plaintiff's motion to exclude Crandall's opinions, the Crandall Study is not helpful on this subject, because there is insufficient data underlying his classification of which activities constitute personal activities. The uncontested fact that a small percentage of workers clock in at the front of the store does not warrant decertification, either. As explained when granting class certification, "[t]hat some employees on occasion clock in at the front of the store, either at the instruction of a manager or by function of their work station near the entrance, goes to the question of damages and does not necessarily

defeat class certification." Order Granting Motion for Class Certification, p. 7; *see also Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) (explaining that "the need for individual damages calculations does not, alone, defeat class certification").

Similarly, as for the question of whether Home Depot requires employees to don their aprons prior to clocking in, that claim presents questions of fact common to the class. Just as at the class certification stage, Plaintiff has presented evidence of a common policy which purportedly requires employees to don their aprons prior to clocking in. Home Depot seeks to rebut this policy by pointing to the Crandall Study, which found that over 70% of employees in the observed time period donned their apron after clocking in, and depositions of class members, who provided mixed answers to the question of when they donned their aprons and whether they were told they had to don their aprons prior to clocking in. As Plaintiff's theory of uncompensated work time is based on a written Home Depot policy, this claim remains viable for resolution on a class basis, as it presents the common question of whether that policy required employees to don aprons prior to clocking in. Given the variation in class members' experiences concerning when they donned their aprons, Home Depot may be able to show at trial that employees were not required by policy to don their aprons prior to the start of their shift. That question, however, is one for the factfinder, and does not require decertification. In short, the commonality requirement of Rue 23(a) remains satisfied as to the Hourly Employee class.

Further, the predominance requirement of Rule 23(b)(3) remains satisfied as to the Hourly Employee class. "The predominance inquiry is mainly concerned with the balance between individual and common issues." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (en banc) (internal quotation marks and citation omitted). Common issues will predominate as to whether employees were subject to Defendant's control on their walk to the back of the store, and similarly common issues will predominate as to whether workers were required by Home Depot policy to don their aprons prior to clocking in. The motion to decertify the class is therefore denied as to the Hourly Worker class.

### B. Lock-In Class

Home Depot argues that commonality and predominance are not satisfied for the Lock-In Class. Specifically Home Depot argues that three questions Plaintiff must prove as part of his claim cannot be satisfied with common proof and that individual issues will predominate as to these questions. These questions are (1) whether members of the class actually had to wait to be released from the stores; (2) whether Home Depot knew or should have known that employees were waiting without compensation; and (3) whether members of the class were not paid for time waiting to be released from stores.

It is without question that on at least some occasions, members of the class did not have to wait to exit the door at the end of their shifts. A Home Depot policy states that a Home Depot associate "must be at the main exit door to allow . . . associates to exit." The Crandall Study found that associates were let out with no wait 61% of the time, and points to this statistic to argue that "as a general rule, this policy was followed." Motion to Decertify, p.9. Home Depot further argues that "in those few instances where a wait occurred, it typically was so short—30 seconds or less— that it likely would not have changed the associate's clocked time in any event." *Id.* This argument is incredulous on its face, given that the Crandall Study documented 4,300 post-shift exits, meaning the "few instances" to which Home Depot refers includes over 1,600 exits. Moreover, 18% of the observed exits had a wait time of a minute or more, which amounts to over seven hundred exits. The Crandall Study also says nothing about the percentage of workers that have ever experienced post-shift waits to leave the warehouse; it only provides information about how many workers had to wait during a one-week period. A worker who may not have experienced a wait during the week observed for the Crandall Study may have experienced wait times on numerous other occasions during other weeks.

The Krosnick Survey also has limitations, as it only surveyed a small portion of the class, but it asked class members about their experiences over the course of the class period, not just a single week. The survey results state that 97% of members of the lock in class experienced an off-the-clock wait to be let out of the warehouse. This study offers evidence that adherence to Home

Depot's policy of requiring a worker to be present at the door to let employees out was not always followed for most workers. Common questions of law and fact exist for the class as to whether class members experienced an off-the-clock wait to be let out of the store, and these common issues will predominate over individualized issues.

The question of commonality and predominance is more complex as to the element of whether Home Depot knew or should have known that uncompensated work was occurring. Plaintiff argues that commonality and predominance is established due to the nature of the violations Plaintiff alleges. After all, to be let out of the warehouse, class members had to be let out by a manager or another key holder. Plaintiff cites to cases in other legal contexts which have held that the knowledge of any employee may be imputed to the employer. *See Liu v. Win Woo Trading, LLC*, No. 14-cv-02639-KAW, 2016 WL 627387, *1 (N.D. Cal. 2016); *Fromberg v. Department of Alcoholic Beverage Control*, 169 Cal.App.2d 230, 234 (1959). Defendant points out the inconsistency of this argument as applied to unpaid work cases: the employee who alleges unpaid work time will always be aware of the unpaid work, and if their knowledge can be imputed to the employer, the knowledge element of the claim would be toothless.

Plaintiff's claim, however, does not rest on imputing *any* employee's knowledge to Home Depot; it rests on imputing knowledge from managers and other keyholding employees to Home Depot. Defendant does not point to any caselaw from California wage and hour cases which states that a manager's knowledge is insufficient to trigger knowledge by the defendant employer. In this instance, a manager who arrives at a door to let out waiting employees is constructively made aware that employees were not let out in accord with company policy.

Further, concerns about whether some employees submitted time adjustment forms, and thus were compensated for wait time, does not warrant decertification. The number of employees who submitted time adjustment forms appears to be minimal. As the Court noted at the class certification stage, "a close examination of Home Depot's closing procedures policy reveals that the instruction regarding use of a time adjustment form is directed only at the associate who is specially designated as the last hourly employee to leave to the store for the night." Order Granting Motion for Class Certification, pp. 9-10. According to the first report from Dr. Krosnick,

only six percent of survey respondents were ever told they could request pay for the time spent waiting to leave the store. This policy, and the findings from Dr. Krosnick's survey, also suggest that there is no risk a significant number of managers were under the impression that workers who waited to be let out were submitting time adjustment forms, further mitigating concerns about Home Depot's knowledge. Thus, the possibility that workers could have submitted time certification forms does not warrant decertification. Commonality is established on the element of Home Depot's knowledge as well.

Similarly, predominance is also established as to the questions of employer knowledge and payment for wait time. Given that Plaintiff seeks to establish Home Depot's knowledge through managers' acts in releasing class members from the store—something that had to occur every time a class member left following a post-closing shift—common questions will predominate over individualized inquiries. Questions regarding compensation via time adjustment forms may be addressed at the damages phase, meaning common questions will still predominate as to whether employees were unpaid for wait time. Thus, decertification is not warranted as to the Lock-In Class, and Home Depot's motion is denied.

### C. Standing and *TransUnion*

Finally, *TransUnion* does not require decertification due to lack of standing. In *TransUnion*, the Supreme Court held that "[e]very class member must have Article III standing in order to recover individual damages." 141 S.Ct. at 2208. "The Supreme Court expressly held open the question 'whether every class member must demonstrate standing before a court certifies a class.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-56514, 2022 WL 1053459, at *19 n.32 (9th Cir. Apr. 8, 2022) (discussing *TransUnion*, 141 S.Ct. at 2208 n.4). Instead, *TransUnion* instructs that "Rule 23 also requires a district court to determine whether individualized inquiries into this standing issue would predominate over common questions[.]" *Id.* at *9 n.12 (discussing *TransUnion*, 141 S.Ct. at 2208).

Here, individualized inquiries into standing do not predominate over common questions. Class members who are not entitled to damages may be weeded out at the claims phase, preventing any individuals without standing from "recover[ing] individual damages." *TransUnion*,

141 S.Ct. at 2208. Further, the Ninth Circuit has rejected "the [] argument that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members." *Olean*, 2022 WL 1053459, at *9. That even Dr. Krosnick's survey indicates that a small percentage of the class never had to walk to the back of the warehouse to clock in, or never had to wait to be let out of the store at the end of shift, does not prevent certification. Thus, Plaintiff's classes are not impermissibly overbroad, as argued by Home Depot.

In short, the motion to decertify the class is denied as to both the Hourly Wage Class and the Lock-In Class. Plaintiff has put forth sufficient evidence to demonstrate the commonality and predominance requirements of Rule 23(a) and 23(b). Whether Plaintiff's evidence will convince the trier of fact to rule in his favor is another question, but that is a question for trial.

### VI. Conclusion

Defendant's motion to decertify the class is denied. Plaintiff's motion to exclude the Crandall Report is granted in part and denied in part. Home Depot's motion to exclude reports from two of Plaintiff's expert witnesses is denied.

**IT IS SO ORDERED**.

Dated: May 6, 2022

_____
RICHARD SEEBORG
Chief United States District Judge