UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN UTNE, et al.,<br><br>     Plaintiffs,<br><br>     v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>     Defendant. | Case No. 16-cv-01854-RS<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT** |

## I. INTRODUCTION

More than seven years after this litigation began, the parties have reached a settlement for which Plaintiffs seek preliminary approval. Under the proposed Settlement Agreement, Defendant Home Depot U.S.A., Inc. ("Home Depot"), will provide a gross payment of $72.5 million to resolve the claims of three classes — two of which have already been certified (the "Hourly Employee Class" and the "Post-Shift Class"), and one class (the "Rounding Class") for which Plaintiffs seek certification pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Upon review, the Settlement Agreement appears fair, adequate, and reasonable such that preliminary approval is warranted. As such, the motion will be granted.

## II. BACKGROUND

The background of this case and Plaintiffs' averments have been discussed at length in the many orders previously issued in this case. In short, this wage and hour class action avers that Home Depot failed to pay its employees all wages due, in several ways. Plaintiffs sought and

obtained certification of two classes: the Post-Shift Class (previously referred to and certified as the "Lock-In Class") and the Hourly Employee Class. With respect to the former, Plaintiffs allege Home Depot did not pay employees who worked closing shifts for the time they spent waiting in locked stores until being let out by a supervisor; and with respect to the latter, Plaintiffs contend Home Depot did not compensate employees for time spent walking through Home Depot stores to clock-in for their shifts. Summary judgment was granted to Home Depot as to its rounding policy with respect to timekeeping.

The parties proceeded through class certification, partial summary judgment, formal and expert discovery, and a *Daubert* hearing. After participating in a full-day mediation session and subsequent negotiations, the parties arrived at the current Settlement Agreement. Under the Agreement, Home Depot will pay $72.5 million as a gross settlement amount. From this, Plaintiffs propose to deduct (1) one-third of the gross amount (or roughly $24.16 million) in attorney fees; (2) out-of-pocket costs not to exceed $3.5 million; (3) a $25,000 service award for the Estate of John Utne and a $7,500 award for Alfred Pinto;[1] (4) up to $750,000 in settlement administration costs;[2] and (5) a $10,000 reserve fund for "disputed, untimely and self-identified claims," the balance of which will be donated to The Homer Fund as the *cy pres* recipient. Dkt. 363 ("Mot."), at 6; *see* Dkt. 363-3 ¶ 3 (describing The Homer Fund). After these deductions, 5% (or $2.2 million) will constitute the PAGA Settlement Fund. Pursuant to Cal. Lab. Code § 2699(i), 75% of this Fund will be paid to the California Labor and Workforce Development Agency ("LWDA"), and the remaining 25% will go to the PAGA group members. This leaves around $41.8 million as

---

[1] John Utne initially served as the named Plaintiff and class representative. Alfred Pinto was then added as an additional class representative in light of Mr. Utne's failing health. After Mr. Utne passed away earlier this year, the parties stipulated to substituting him with his Estate through his successor in interest Karen Utne.

[2] Plaintiffs have since selected KCC as the proposed Settlement Administrator, with costs not to exceed $693,400. *See* Dkt. 364. Because KCC's actual costs do not meaningfully change the Net Settlement Amount, this order uses the $750,000 figure presented in the motion to calculate and compare the Class and PAGA recovery with Plaintiffs' estimated maximum recoveries on their claims. That said, in their motion for final approval, Plaintiffs should correct these figures to reflect the actual costs.

the Net Class Settlement Fund. From this, 41% is dedicated to the Hourly Employee Class claims; 50% is dedicated to the Post-Shift Class claims; and 9% is dedicated to the Rounding Class claims. This results in an average payout of roughly $77 for Hourly Employee Class members, $72 for Post-Shift Class members, $25 for Rounding Class members, and $2.50 for PAGA group members.[3] As the gross settlement is non-reversionary, "any deductions from the [gross] fund not approved by the Court will go back into the net settlement fund." Mot. at 1. Further, Class members will not be required to file claims. Rather, payments will be calculated based on each member's respective number of shifts worked based on Defendant's records, and payments will then be distributed directly. The Agreement also contains an escalation clause that effectively limits Defendant's overall exposure should the actual number of Class members increase.

| | |
|---|---|
| **Gross Settlement Amount** | **$72,500,000.00** |
| Minus Attorney Fees (33.3%) | $24,166,666.67 |
| Minus Costs (up to) | $3,500,000.00 |
| Minus Service Awards | $32,500.00 |
| Minus Settlement Administration costs (up to) | $750,000.00 |
| Reserve Fund | $10,000.00 |
| **Net Settlement Amount** | **$44,040,833.33** |
| PAGA Settlement (5%) | $2,202,041.67 |
| *PAGA Members (25%)* | $550,510.42 |
| *LWDA (75%)* | $1,651,531.25 |
| Class Settlement (95%) | $41,838,791.66 |
| *Post-Shift Class (41%)* | $17,153,904.58 |
| *Hourly Employee Class (50%)* | $20,919,395.83 |
| *Rounding Class (9%)* | $3,765,491.25 |

In exchange, the class members will release all claims "that were or could have been asserted based on the facts alleged in any Complaint or any notice provided to the LWDA by any

---

[3] Plaintiffs report there are 272,386 members of the Hourly Employee Class, 235,934 members of the Post-Shift Class, 149,551 members of the Rounding Class, and 227,139 PAGA group members as of March 2023.

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS/PAGA SETTLEMENT
CASE NO. 16-cv-01854-RS
3

Named Plaintiff." Dkt. 363-1 ("SA") ¶ 66. This includes the state wage and hour claims raised here, as well as claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*[4]

### III. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy that favors settlements" in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Under Rule 23(e), parties may seek approval of classes "proposed to be certified for the purposes of settlement." Fed. R. Civ. P. 23(e). First, the proposed settlement class(es) must meet the criteria for certification under Rule 23(a) — that is, numerosity, commonality, typicality, and adequacy — as well as one of the Rule 23(b) categories. Here, Plaintiffs rely on Rule 23(b)(3), which permits certification of a class where "questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Under Rule 23(e), courts must also determine whether the settlement agreement is "fair, adequate, and reasonable to all concerned." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019). This requires assessing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). The Northern District of California has also adopted additional procedural guidance for evaluating proposed settlements.

Procedurally, parties must first seek preliminary approval of their settlement agreement. This step primarily evaluates whether "the proposed settlement appears to be the product of

---

[4] The Settlement Agreement and the proposed Notice both misstate the citation for FLSA as "29 U.S.C. Section 20, et seq." *See* SA ¶ 66; Dkt. 363-1, Ex. 2, at 4. These must be corrected as a condition for preliminary approval.

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS/PAGA SETTLEMENT
CASE NO. 16-cv-01854-RS

4

1    serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

2    grant preferential treatment to class representatives or segments of the class, and falls within the

3    range of possible approval." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966

4    (N.D. Cal. 2019) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

5    2007)). *But see Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016) (questioning the

6    rationale for conducting a "lax" inquiry at the preliminary approval stage). If preliminary approval

7    is granted, notice is distributed to the class members and a final hearing is held to determine

8    whether the settlement satisfies Rule 23(e)(2).

## IV. DISCUSSION

Each of the proposed Settlement Classes satisfies the requirements of Rule 23, and the proposed Settlement Agreement appears fair, adequate, and reasonable. As such, preliminary approval is warranted.

### A. Rule 23(a) and Rule 23(b) Requirements

As discussed above, the Hourly Employee Class and the Post-Shift Class were previously certified under Rule 23(b)(3). Notwithstanding the fact that it has been five years since that order, these two Classes still presumptively meet the Rule 23(a) and Rule 23(b)(3) requirements. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012); *Sinohui v. CEC Ent., Inc.*, No. 14-cv-02516-JSK-KK, slip op. at 7 (C.D. Cal. Dec. 13, 2017). *But see Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 318–19 (C.D. Cal. 2016). This presumption is further justified by the fact that both Classes survived Defendant's motion to decertify unscathed. *See* Dkt. 272. Plaintiffs propose to modify the Class definitions in very minor ways: (1) they seek to expand the Class Period through the date of Preliminary Approval; and (2) they seek to change the definition of the Hourly Employee Class to specify that the class encompasses retail employees.[5] Neither of these modifications meaningfully change the analysis

---

[5] The Hourly Employee Class was certified as "[a]ll individuals employed by Home Depot in hourly-paid or non-exempt positions in California at any time since March 8, 2012." Dkt. 92, at 1. The class definition included in the Settlement Agreement, by contrast, is "all individuals employed by Home Depot *who worked one or more shifts in retail stores* in hourly-paid or non-

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS/PAGA SETTLEMENT
CASE NO. 16-cv-01854-RS

5

1   under Rule 23(a) or 23(b)(3). The first would, if anything, tend only to increase the number of

2   class members, of which there are already more than enough to satisfy Rule 23(a)(1). The second

3   mainly conforms the Class definition more precisely to the scope of this litigation.

4       Plaintiffs further propose adding the Rounding Class as a component of the settlement.

5   This Class is defined as:

> all individuals employed by Home Depot who worked one or more shifts in retail stores in hourly-paid or non-exempt positions in California during the Class Period and who were paid less than their actual clock-in and clock-out time for his or her total hours worked during the Class Period as a result of Home Depot's practice of rounding time to the nearest quarter hour, including persons hired after notice of class certification.

SA ¶ 74. This definition is very similar in scope to those of the two certified Classes, and it may be certified for the same reasons. Plaintiffs represent that this Class, like the other two, is composed of several hundred thousand employees, thus easily satisfying the numerosity requirement. The Class mechanism is superior for the same reasons as the certified Classes. Plaintiffs themselves were further subject to the rounding policies in question, rendering them typical; and they are adequate to represent this Class as well. Because the rounding policy appears to have applied broadly, rather than in a site-specific manner, both commonality and predominance are met. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 322 (N.D. Cal. 2013) (collecting cases involving common policies). Finally, while the rounding claims themselves were sheared on summary judgment, this does not stand in the way of certification for the purposes of settlement: "case law has long recognized the ability to settle claims that had been previously dismissed on the merits." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333 PJH, 2013 WL 12333442, at *48 (N.D. Cal. Jan. 8, 2013), *report and recommendation adopted*, 2014 WL 12879520 (N.D. Cal. June 27, 2014). As such, the Rounding Class passes muster under Rule 23(a) and Rule 23(b)(3), as with the previously certified Classes.

---

exempt positions in California during the Class Period, including persons hired after notice of class certification." SA ¶ 40 (emphasis added).

**B. The Settlement Agreement Appears to Be Fair, Adequate, and Reasonable**

*1. The Amount of the Settlement Falls Within the Generally Acceptable Range for Approval, and It Is Justified Given the Risks of Continued Litigation*

The overall amount is "perhaps the most important factor to consider" in assessing a proposed settlement. *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016). On this score, the settlement appears to serve the Class members' interests. Plaintiffs' counsel describes the settlement reached here as "an outstanding result for the settlement class . . . especially when compared against the risks involved in litigating this action through trial and potential appeals." Dkt. 363-2 ¶ 10. There are a number of ways to test this assertion, but in the end, "the negotiated amount is fair and reasonable no matter how you slice it." *Rodriguez v. West Pub. Corp.*, 593 F.3d 948, 965 (9th Cir. 2009).

The Net Class Settlement Fund, regardless of the amount of attorney fees ultimately deducted, represents a significant percentage of what Plaintiffs estimate to be Defendant's maximum exposure on each of the three Classes' claims (excluding penalties, interest, and liquidated damages).[6] Zooming in, the portion of the Fund allocated to the Hourly Employee Class claims is roughly one-third of Defendant's maximum exposure; the portion allocated to the Rounding Class claims is nearly 90% of Defendant's maximum exposure; and the portion allocated to the Post-Shift Class claims "actually exceeds (or is roughly equal to) the potentially recoverable unpaid wages." Mot. at 15. These figures necessarily shrink when you include penalties, interest, and liquidated damages, but the Net Class Settlement Fund would nonetheless be substantial. The story is slightly different when examining the PAGA penalties. Again, the settlement establishes roughly $2.2 million as the PAGA Settlement Fund. This is contrasted

---

[6] Plaintiffs estimate Defendant's maximum exposure, excluding penalties, interest, and liquidated damages to be roughly $82 million. This is calculated as follows: $23,252,728.08 (max. exposure for Post-Shift claims) + $54,366,994.00 (max. exposure for Hourly Employee claims) + $4,450,720.00 (max. exposure for Rounding claims) = $82,070,442.08. *See* Mot. at 15–18. Even if Plaintiff's large fee request (one-third of the gross amount) were to be granted, the Net Settlement Fund would still represent over 50% of Defendant's maximum exposure.

against a theoretical maximum of over $1 billion, though if litigated successfully the penalties would likely be much lower: by Plaintiffs' estimate, this figure would be somewhere closer to $99 million. Plaintiffs concede this is a "small percentage of the possible exposure," coming in at a little over 2% of the "realistic" number and only 0.22% of the theoretical maximum. Mot. at 27.[7]

Combining these two pools — the Class recovery and the (reasonable) PAGA recovery — Plaintiffs estimate they stand to recover somewhere between $181 million (excluding penalties, etc.) and $313 million (including penalties, etc.) if they were to prevail at trial. The Net Settlement Fund is thus discounted,[8] to be sure, but it is certainly within the range of recoveries that Ninth Circuit district courts often approve. *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (preliminarily approving settlement of about 25% to 35% of the maximum); *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 WL 5907869, at *7–8 (N.D. Cal. Oct. 11, 2016) (preliminarily approving settlement worth 8.1% of the full verdict value); *O'Connor v. Uber Tech., Inc.*, 201 F. Supp. 3d 1110, 1132 & n.18 (N.D. Cal. 2016) (collecting cases and noting 10% recovery was "at the low end of reasonable recovery"); *cf. Cavazos v. Salas Concrete, Inc.*, No. 19-cv-00062-DAD-EPG, 2022 WL 2918361, at *5–6 (E.D. Cal. July 25, 2022) (concluding fund worth 5.8% of the value of non-PAGA claims was "below the general range of percentage recoveries that California courts . . . have found to be reasonable"). Similarly, the PAGA recovery, while even smaller, is above the 1% threshold that many courts find inherently concerning. *See Haralson*, 383 F. Supp. 3d at 972–73.

These discounts are justified when examining the strength of the overall case. Plaintiffs suggest that they present strong claims on behalf of the Post-Shift Class, but that several risks at trial and on appeal could still have undermined or reduced them. The Hourly Employees' claims appear weaker and riskier, owing in part to their novelty. In any case, prevailing on either would,

---

[7] The motion appears to state erroneously that the PAGA allocation is $3,625,000, though this is inconsistent with earlier portions of the motion as well as the Agreement itself. *See* Mot. at 27.

[8] Again, assuming (without deciding) that the one-third fee request is approved, the $44 million Net Settlement Fund would represent between 14% and 24% of the projected range of recovery.

1   of course, require convincing a jury that Defendant committed the violations averred, which
2   cannot be taken for granted. As noted above, the Rounding Class claims are no longer part of the
3   litigation, having been dismissed earlier; and the Hourly Employees' wage statement penalties,
4   and both certified Classes' waiting time penalties, were also dismissed. Thus, recovering anything
5   on those three bases would have required a successful appeal. Finally, although this case is at an
6   advanced stage in the litigation lifecycle, Plaintiffs would of course have to prepare for and
7   undergo a trial in order to recover anything, which would magnify the already sizable costs they
8   (alongside Defendant) have incurred to date. Plaintiffs' counsel have significant experience
9   handling complex litigation, and their representations that the settlement is not only justified, but
10  also to the Class's substantial benefit, is worthy of deference. *See* Dkt. 363-3 ¶¶ 6–10; Dkt. 363-1
11  ¶¶ 29–31. Thus, in light of the risks inherent to proceeding to trial, and taking counsel's
12  perspectives into consideration, the settlement appears fair, reasonable, and adequate.

*2. The Proposed Settlement Presents No Deficiencies Precluding Preliminary Approval*

For the most part, the settlement itself appears to be the product of "arm's length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965. First, as noted above, the Class release covers FLSA claims that were not brought here. While releases of claims not included in the complaint are frequent causes for concern, *e.g.*, *Haralson*, 383 F. Supp. 3d at 967–69, Plaintiffs are correct that these claims would have been released even without this additional language. *See Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1111–12 (9th Cir. 2018). As such, the release of these claims is more a technicality than anything, and this does not present an obstacle to preliminary approval. The proposed service awards are also reasonable, especially given the length of this case. *E.g.*, *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1026 (E.D. Cal. 2019) (approving $45,000 service awards for four named plaintiffs).

In addition, the settlement does not appear to prejudice certain class members over others. The Net Settlement Fund is to be divided among the three subclasses based on "the relative valuations of the claims." Mot. at 21. Thus, while Plaintiffs estimate Hourly Employee claims to be potentially worth more overall than the Post-Shift claims, the settlement apportions the riskier

1   Hourly Employee claims a lower amount of the Net Settlement Fund than the more-certain Post-Shift Claims. Of course, as noted above, the Rounding Class claims have been dropped, which justifies the fact they constitute a smaller portion of the Fund. This approach to allocating the benefits of the settlement among the Class members thus appears fair, given the respective risks and values of the claims. Further, the likely high amount of overlap among members of the different Classes means that, even if the Fund were to be apportioned differently, it would only marginally change any given member's recovery.

      *3. Plaintiffs Will Be Expected to Provide Strong Support for the Attorney Fee Request*

Plaintiffs' attorney fee request is not unreasonable *per se*, but it is incomplete. For one thing, Plaintiffs' counsel does not provide a lodestar estimate, either in the motion or any of its accompanying declarations. Counsel has noted this is a work in progress, and the motion instead generally states that they have expended significant time and resources on this litigation. No doubt they have, but it is difficult to test the validity of their claim to one-third of the Gross Settlement Fund without a lodestar to serve as a cross-check. While Plaintiffs describe a one-third award as "extremely reasonable," Mot. at 18, that request falls on the higher end of fee awards typically granted by district courts in the Ninth Circuit. *See, e.g.*, *Arredondo v. S.W. & Pac. Spec. Fin., Inc.*, No. 18-cv-01737-DAD-SKO, 2022 WL 2052681, at *11 (E.D. Cal. June 7, 2022). That said, the settlement does leave a large portion to the Class, which mitigates the concern that the fee request will dwarf the Class recovery. *E.g.*, *Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011) (balking at potential that counsel could recover "the lion's share — 80 percent — of the total payout").

Of some concern is the presence of a "clear sailing" provision in the Settlement Agreement. Under this provision, Defendant agrees it will "not oppose a request for a maximum of one-third (33.33%) of the Gross Settlement Amount." SA ¶ 94a. While such provisions are not prohibited, they are nonetheless disfavored, as they both "increase[] the likelihood that class counsel will have bargained away something of value to the class" and "deprive[] the court of the advantages of the adversary process." *Bluetooth*, 654 F.3d at 948 (first alteration in original)

(quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)); *see Roes, 1–2 v. SFBCS Mgmt., LLC*, 944 F.3d 1035, 1050–51 (9th Cir. 2019). As such, district courts have a "heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefits to the class." *Id.* Plaintiffs' motion does not address this provision, and it is difficult to ascertain on the record presented whether its inclusion is evidence of collusive behavior. *See Hoffman v. Dutch LLC*, 317 F.R.D. 566, 578 (S.D. Cal. 2016). However, the non-reversionary nature of the Fund means that even reducing or adjusting these amounts will ultimately benefit the Class members, rather than Defendant, thus reducing the likelihood of collusion or impropriety. *See In re Toys R Us-Del., Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 459 (C.D. Cal. 2014); *cf. Harris*, 2011 WL 4831157, at *5. For this reason, the provision does not preclude granting preliminary approval. However, between the large fee request and the fact that the request will be unopposed, Plaintiffs are advised that their motion for attorney fees will be subject to close scrutiny.

## V. CONCLUSION

Plaintiffs have demonstrated that the Settlement Class may be certified under Rule 23(e) and that the proposed Settlement Agreement appears to be fair, adequate, and reasonable. As such, the motion is granted. The Court orders the following:

1. The proposed settlement is preliminarily approved, under the terms, definitions, and provisions expressed in the Settlement Agreement.
2. Pursuant to Rule 23(e), the proposed Settlement Class is preliminarily certified, with the Class Period running from March 8, 2012, through and including the date of this order. The Settlement Class contains the following subclasses:
    a. The "Hourly Employee Class" is defined as all individuals employed by Home Depot who worked one or more shifts in retail stores in hourly-paid or non-exempt positions in California during the Class Period, including persons hired after notice of class certification.
    b. The "Post-Shift Class" is defined as all individuals employed by Home Depot in

    hourly-paid or non-exempt positions in Home Depot stores in California during the Class Period, including persons hired after notice of class certification, who worked at least one Closing Shift.

  c. The "Rounding Class" is defined as all individuals employed by Home Depot who worked one or more shifts in retail stores in hourly-paid or non-exempt positions in California during the Class Period and who were paid less than their actual clock-in and clock-out time for his or her total hours worked during the Class Period as a result of Home Depot's practice of rounding time to the nearest quarter hour, including persons hired after notice of class certification.

3. Plaintiffs are preliminarily appointed as class representatives for the Settlement Class. Shaun Setareh and Thomas Segal of the Setareh Law Group, and Cody R. Kennedy, Alan Lazar, and Marissa Mayhood of Marlin & Saltzman LLP, are preliminarily appointed as Class Counsel for the same.

4. KCC is appointed as the Settlement Administrator.

5. The proposed Class Notice and the notice procedures outlined by the parties are approved, subject to the correction noted *supra* note 4. Notice shall be disseminated to the Settlement Class members pursuant to the relevant provisions of the Settlement Agreement.

6. A Final Approval Hearing is scheduled for Thursday, February 15, 2024, at 1:30 p.m. The motion for final approval must be filed no later than 21 days prior to the Hearing.

7. As noted at the hearing, the parties shall, as soon as is practicable, file on the public docket a final implementation schedule reflecting the correct dates and deadlines for each of the events listed in Plaintiffs' proposed order. *See* Dkt. 363-4, at 11–12. This includes the dates by which the motion for attorney fees' and costs, and the motion for final approval, must be filed.

**IT IS SO ORDERED**.

Dated: July 28, 2023

_____
RICHARD SEEBORG
Chief United States District Judge